**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:12-CV-263** |
| | ) | |
| **JOHN DOES 1-14,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

This copyright infringement action is before the Court on Defendant John Doe No. 6's Motions to Quash (Docket # 12) and to Sever Does 2-14 (Docket # 13) and Defendant John Doe No. 7's Motion to Sever John Doe Defendants 2-14 (Docket # 17).  Plaintiff Malibu Media, LLC, responded to all three motions.  (Docket # 34, 35, 37.)  Although Doe No. 7 replied in support of his motion to sever (Docket # 40), Doe No. 6 did not submit a reply to either of his motions, and the time to do so has since passed.  As such, the motions are now ripe for ruling. For the following reasons, the motion to quash and both motions to sever will be DENIED.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Malibu Media, LLC, a producer of adult entertainment content, owns the copyright for a motion picture entitled "Romantic Memories."  (Compl. ¶ 11; Def. John Doe No. 7's Mot. to Sever John Doe Defs. 2-14 ("Doe No. 7's Mot. to Sever") 1.)  Plaintiff alleges that each of the Doe Defendants unlawfully downloaded and shared this copyrighted work using the BitTorrent file sharing protocol.  (*See* Compl. ¶¶ 10, 33.)  According to the Complaint,

BitTorrent is one of the most common peer-to-peer file sharing protocols used for distributing large amounts of data.  (Compl. ¶ 14.)  It is able to distribute a large file without creating a heavy load on the source computer and network by allowing users to join a "swarm" of host computers to download and upload from each other simultaneously.  (Compl. ¶ 15.)

Plaintiff retained computer investigators to identify the Internet Protocol ("IP") addresses associated with the people using the BitTorrent protocol to reproduce or distribute its copyrighted works, including "Romantic Memories," which was identified by a "Unique Hash Number."  (Compl. ¶ 36; *see* Compl.¶¶ 38-39.)  The investigation revealed that the 14 IP addresses attached as Exhibit A to the Complaint had copied a piece of "Romantic Memories," as identified by its Unique Hash Number.  (Compl. ¶¶ 38-39; *see* Compl. Ex. A.)  The individuals using these 14 IP addresses engaged in these transactions on different dates or times between May 22, 2012, and June 23, 2012.  (*See* Compl. Ex. A.)  But Plaintiff maintains that each Defendant was part of the same series of transactions (Compl. ¶ 39(B)), stating that "each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions" (Compl. ¶ 33).

As such, on July 30, 2012, Plaintiff brought a single copyright infringement suit against all 14 Doe Defendants, alleging that each Defendant was jointly and severally liable for the infringing activities of each of the other Defendants; that the infringement was part of a series of transactions, involving the exact same torrent file of the copyrighted work, and was accomplished by Defendants acting in concert with each other; and that there were common

questions of law and fact.  (Compl. ¶ 10.)  Because the Defendants were only known by their IP addresses, Plaintiff—after receiving leave from this Court to do so (Docket # 5, 6)—served third party subpoenas on the Internet Service Providers ("ISPs") (Comcast and Embarq) that assigned these IP addresses to discover the name, address, telephone number, e-mail address, and Media Access Control address of the Defendant associated with each IP address (*see* Docket # 32, 33).

Doe No. 6 subsequently moved both to quash the subpoena directed to Comcast (Docket # 12) and to sever Does 2-14 from the action (Docket # 13).  Doe No. 7 also filed a motion to sever Does 2-14.  (Docket # 17.)  The Court will first address the motion to quash and then will consider both motions to sever.

### III.  THE MOTION TO QUASH

Although Plaintiff has issued two subpoenas in this case, one directed to Comcast Corporation (Docket # 32) and a second directed to Embarq Corporation (Docket # 33), Doe No. 6 moves to quash only the subpoena directed to Comcast, which seeks the subscriber information of Does 1-13 (*see* Docket # 12-1).

#### A.  Standard

Federal Rule of Civil Procedure 45(a) permits the issuance of subpoenas to produce documents and other tangible things in the custody or control of a person.  *Richter v. Mut. of Omaha Ins. Co.*, No. 06-Misc.-011, 2006 WL 1277906, at *2 (E.D. Wis. May 5, 2006); *see* Fed. R. Civ. P. 45(a).  Under Rule 45, a court must quash or modify a subpoena if it fails to allow a reasonable time to comply; requires a person who is neither a party nor a party's officer to travel more than 100 miles; requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden.  Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv).

Furthermore, to protect a person subject to or affected by a subpoena, a court may quash a subpoena if it requires disclosure of a trade secret or other confidential information, disclosure of an unretained expert's opinion, or a person who is neither a party nor a party's officer to incur substantial expenses to travel more than 100 miles to attend trial. Fed. R. Civ. P. 45(c)(3)(B)(i)-(iii).

The party seeking to quash a subpoena under Rule 45(c)(3)(A) bears the burden of demonstrating that the information sought is privileged or subjects a person to an undue burden. *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07 cv 3, 2012 WL 776694, at *3 (N.D. Ind. Mar. 7, 2012) (citation omitted); *see Pettit v. City of Columbus*, No. 104CV1464JDTTAB, 2005 WL 2218373, at *1 (S.D. Ind. Sept. 9, 2005); *Jones v. Hirschfield*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant."); *Wahuchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 543 (N.D. Ind. 1991). As with other discovery issues, deciding whether to grant a motion to quash lies within the sound discretion of the district court. *Sullivan v. Gurtner Plumbing, Inc.*, No. 11-cv-6261, 2012 WL 896159, at *1 (N.D. Ill. Mar. 13, 2012) (citing *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992)).

### B. Standing

Although Plaintiff does not raise the issue, the Court will briefly address Doe No. 6's standing to quash a subpoena to Comcast, a third party to this action. As a general rule, "a party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless it implicates a party's privacy interests." *Hard Drive Prods. v. Does 1-48*, No. 11 CV 9062, 2012 WL 2196038, at *3 (N.D. Ill. June 14, 2012);

*see Brady v. Cent. Ind. Reg'l Blood Ctr. Inc.*, No. 1:99-MC-19, 1999 WL 33912610, at *1 (N.D. Ind. Oct. 6, 1999) (citations omitted); *see also United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.").      As such, in similar cases, courts have found that a Doe defendant accused of copyright infringement has standing to object to a subpoena issued to ISPs, even where the movant's privacy interest is "minimal at best." *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012) (quoting *Malibu Media, LLC v. Does 1-25*, No. 12-cv-0362-LAB (DHB), 2012 WL 2367555, at *2 (S.D. Cal. June 21, 2012)); *see Third Degree Films, Inc. v. Does 1-2010*, No. 4:11 MC 2, 2011 WL 4759283, at *5 (N.D. Ind. Oct. 6, 2011) (finding that a Doe defendant had standing to assert his privacy interest in the information requested from the ISP).

Here, because Doe No. 6 "has at least a minimal privacy interest in the information requested by the subpoena, he has standing to object." *Sunlust Pictures*, 2012 WL 3717768, at *2; *see Third Degree Films, Inc. v. Does 1-108*, No. DKC 11-3007, 2012 WL 669055, at *2 (D. Md. Feb. 28, 2012) ("[H]owever minimal or 'exceedingly small' the Doe Defendants' interests here are, parties need only have '*some* personal right or privilege in the information sought' to have standing to challenge a subpoena to a third party.").

## C. Analysis

Having determined that Doe No. 6 has standing to challenge the subpoena directed to Comcast, the Court turns to his arguments in favor of quashing that subpoena. Doe No. 6 first argues that he did not infringe on Plaintiff's copyrighted work and that Plaintiff "has not shown a preponderance of evidence that [he] should even be a named defendant in this case." (Mot. to

Quash & Vacate Subpoena to Produc. Docs., Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Mot. to Quash") ¶¶ 1-2.) Doe No. 6 also contends that Plaintiff's method of identifying alleged infringers through their IP addresses is "imprecise" and cannot reveal the identity of the alleged infringer because someone else may have violated Plaintiff's copyright while using Doe No. 6's IP address. (*See* Mot. to Quash ¶¶ 2-3.)

But all of these arguments essentially amount to a denial of liability, which "is not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit." *Hard Drive Prods.*, 2012 WL 2196038, at *4; *accord First Time Videos, LLC v. Does 1-18*, No. 4-11-cv-69-SEB-WGH, 2011 WL 4079177, at *2 (S.D. Ind. Sept. 13, 2011) (quoting *First Time Videos v. Does 1-500*, 276 F.R.D. 241, 251 (N.D. Ill. 2011)). Furthermore, such objections to the relevancy of the subpoena based on the possibility that Doe No. 6's IP address may have been used by someone else to violate the copyright are likewise "irrelevant and premature because they go to the merits of Plaintiff's claims and do not address the propriety vel non of the subpoenas." *Third Degree Films, Inc.*, 2011 WL 4759283, at *5 (quoting *West Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 13 (D.D.C. 2011)). And it is Doe No. 6, not Plaintiff, who bears the burden of establishing that the subpoena falls within the Rule 45 criteria for quashing a subpoena. *Hard Drive. Prods.*, 2012 WL 2196038, at *5 (citation omitted). A denial of liability is simply not among those criteria. *Id.* (citing Fed. R. Civ. P. 45(c)(3)(A)).

Doe No. 6 further takes issue with the fact that "no DMCA take-down notices were issued," argues that the subpoena is being used as a tool to give Plaintiff "access to unreasonable extended searches and seizure of any and all information they see fit," and invokes the Fourth

6

and Fifth Amendments to the United States Constitution.  (Mot. to Quash ¶¶ 4-7), wholly irrelevant arguments that have no bearing on whether the subpoena should be quashed under Rule 45(c).

As evidenced above—and as Plaintiff suggests (*see* Pl.'s Mem. in Opp. to Mot. to Quash & Vacate Subpoena to Produc. Docs., Information, or Objects or to Permit Inspection of Premises in a Civil Action 2)—missing from Doe No. 6's motion to quash is any argument that any of the grounds for quashing a subpoena under Rule 45(c)(3)(A) are met here.  The two potentially applicable bases are that the subpoena "requires disclosure of privilege or protected matter" or "subjects a person to an undue burden."  Fed. R. Civ. P. 45(c)(3)(A).

But this latter argument—that a subpoena directed to an ISP for an anonymous defendant's Internet subscriber information imposes an undue burden on that defendant—has been consistently rejected by courts because such a subpoena does not require the defendant to produce anything.  *See, e.g.*, *Sunlust Pictures*, 2012 WL 3717768, at *2 ("The subpoena does not impose an undue burden on Doe because he is not the party directed to respond to it."); *First Time Videos*, 2011 WL 4079177, at *1 ("[T]he issuance of a subpoena to the Internet Service Provider of putative defendants does not create an undue burden on the putative defendants because they are not required to produce anything."); *see also Third Degree Films*, 2011 WL 4759283, at *5 (citing *First Time Videos*, 276 F.R.D. at 250; *Voltage Pictures, LLC v. Does 1-5,000*, 818 F. Supp. 2d 28, 36 (D.D.C. 2011)) (holding that "[a] Doe defendant lacks standing to quash a subpoena on the ground of undue burden when the subpoena is directed to the ISP rather than to him" because the subpoena requires the ISP, and not the Doe Defendant, to produce information).

As to the other potential basis for quashing the subpoena, Doe No. 6 argues that fulfilling the subpoena would invade his privacy and jeopardize his identity, which, construed liberally, could amount to an argument that the subpoena requires "disclosure of privilege or protected matter."  (*See* Mot. to Quash ¶¶ 5, 7.)  This argument, however, is ultimately unpersuasive as courts have consistently held that "there is no expectation of privacy in Internet subscriber information because it has already been exposed to a third party, the Internet Service Provider." *First Time Videos*, 2011 WL 4079177, at *1 (citing *Courtright v. Madigan*, No. 09-cv-208-JPG, 2009 WL 3713654, at *2 (S.D. Ill. Nov. 4, 2009)); *accord AF Holdings LLC v. Doe*, No. 12 C 4222, 2012 WL 5520861, at *2 (N.D. Ill. Nov. 13, 2012); *Hard Drive Prods.*, 2012 WL 2196038, at *4; *Third Degree Films*, 2011 WL 4759283, at *3.  Additionally, when there is an allegation of copyright infringement, an individual has no protected privacy interest in their name, address, phone number, e-mail address, or Media Access Control address.  *First Time Videos*, 2011 WL 4079177, at *1.  As such, Doe No. 6's argument that fulfilling the subpoena would invade his privacy and jeopardize his identity is insufficient to quash the subpoena as he has no expectation of privacy in the identifying information the subpoena seeks from the ISP.

Therefore, because Doe No. 6 has not met his burden of showing that the subpoena meets the criteria of Rule 45(c)(3)(A), his motion to quash the subpoena directed at Comcast will be DENIED.

## IV.  THE MOTIONS TO SEVER

Both Doe No. 6 and Doe No. 7 moved to sever Does 2-14 from this case, arguing that joinder is inappropriate under Federal Rule of Civil Procedure 20.  Doe No. 7 further argues that, even if the Doe Defendants are properly joined, the Court should exercise its discretion to sever

them under Rule 21.  The Court will address each of these arguments in turn.

### A. Permissive Joinder Under Rule 20

In their motions (Docket # 13, 17), both Doe No. 6 and Doe No. 7 maintain that Does 2-14 should be severed because there is no single transaction or series of closely related transactions involved in this case as is required for permissive joinder under Rule 20.  (*See* Doe No. 6's Mot. to Sever Does 2-14 ¶ 1; Doe No. 7's Mot. to Sever 6-7.)  Doe No. 7 further claims that the temporal gaps between the transactions here—the 14 transactions occurred at different days or times between May 22, 2012, and June 23, 2012—suggest that the Doe Defendants did not act in concert with each other.  (Doe No. 7's Mot. to Sever 7 (citations omitted).)

In support of joinder, Plaintiff responds that the Doe Defendants' infringement was committed through the same series of transactions as its investigator was able to receive a piece of the copyrighted movie from each Defendant and because each Defendant used BitTorrent and the computers of others to download the same file and allowed others to access their computer to receive it.  (Pl.'s Mem. in Opp. to Def. John Doe No. 7's Mot. to Sever John Doe Defs. 2-14 ("Pl.'s Resp. to Doe No. 7's Mot. to Sever") 3-4.)  Moreover, Plaintiff maintains that, despite the temporal gap between the transactions, Defendants are properly joined because their actions directly relate back to the same initial seed of the swarm and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers.  (Pl.'s Resp. to Doe No. 7's Mot. to Sever 6-7.)

### 1. Standard

Federal Rule of Civil Procedure 20 states that persons may join in one action as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action." Fed. R. Civ. P. 20(a)(2).  In short, to join persons as defendants in an action

under Rule 20, "there must be both a right to relief arising out of the same transaction or

occurrence and a question of law or fact common to all the [defendants]." *Teklehaimanot v.

Park Ctr., Inc*., No. 1:08-CV-220, 2009 WL 799505, at *1 (N.D. Ind. Mar. 24, 2009) (citations

and internal quotation marks omitted); *see also In re Monon Tel. Co.*, 218 F.R.D. 614, 616 (N.D.

Ind. 2003).  "Federal policy favors joinder, and the district court has wide discretion when

deciding whether joinder of parties is proper." *Teklehaimanot*, 2009 WL 799505, at *1 (citation

omitted); *see Monon Tel.*, 218 F.R.D. at 616 ("When the requirements of Rule 20(a) are satisfied

and joinder will not result in undue prejudice to a party, discretion is exercised in favor of

joinder." (citing *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1011 (7th Cir. 1988))).

Furthermore, "[p]ermissive joinder under Rule 20 are to be liberally construed to promote

convenience and judicial economy." *Patrick Collins, Inc. v. John Does 1-9*, No. 12-CV-3161,

2012 WL 4321718, at *2 (C.D. Ill. Sept. 18, 2012) (citations omitted).

   *2. Analysis*

   Courts throughout the country are split over whether joining many anonymous

defendants alleged to have participated in a single BitTorrent "swarm" in a single suit is

appropriate.  *Sunlust Pictures*, 2012 WL 3717768, at *3; *compare, e.g.*, *In re BitTorrent Adult

Film Copyright Infringement Cases*, Nos. 11-3995(DRH)(GRB), 12-1147(JS)(GRB), 12-

1150(LDW)(GRB), 12-1154(ADS)(GRB), 2012 WL 1570765, at *11 (E.D.N.Y. May 1, 2012)

(finding joinder inappropriate because, among other reasons, allegations were insufficient to

show that defendants actually shared file bits with one another), *SBO Pictures, Inc. v. Does 1-57*, No. RWT 12cv22, 2012 WL 1415523, at *2 (D. Md. Apr. 20, 2012) (denying joinder and stating that "the better-reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of the permissive joinder is not satisfied"), *and Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011) (finding no concerted action were "Plaintiff does not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"), *with Pac. Century Int'l v. Does 1-31*, No. 11 C 9064, 2012 WL 2129003, at *2 (N.D. Ill. June 12, 2012) (allowing joinder where the anonymous defendants participated in the same swarm), *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012) (declining to sever where "the Doe Defendants were trading the exact same file as part of the same swarm"), *and First Time Videos*, 276 F.R.D. at 252 (allowing joinder where putative defendants were alleged to have reproduced copyrighted materials and continued to distribute data to others in the swarm).

As to the first joinder requirement—that the claim against each Defendant arose out of the same transaction or series of transactions—courts denying joinder in the BitTorrent context have "generally done so because the plaintiff failed to allege that the defendants simultaneously participated in a single swarm or that the defendants distributed files directly among themselves." *Sunlust Pictures*, 2012 WL 3717768, at *4. But here, Plaintiff alleges that each Defendant "participated in the *same swarm* and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by others types of transmissions" (Compl. ¶ 33 (emphasis added)) and, using the BitTorrent protocol, "copied a piece of Plaintiff's copyrighted Work

identified by the Unique Hash Number" (Compl. ¶ 39(A)).  All of these transactions occurred over a period spanning only a month.  (*See* Compl. Ex. A (indicating that the transactions occurred between May 22, 2012, and June 23, 2012).)

At this stage of the litigation, Plaintiff's allegations that all the Defendants infringed on its copyright by "uploading and downloading the same unique copy of the Work with the same Unique Hash Number through the same BitTorrent protocol that required each participant to send and receive portions of the Work in order to download and view the entire Work" are sufficient to assert a claim against each Defendant arising from the same series of transactions. *Patrick Collins*, 2012 WL 4321718, at *2; *see also Third Degree Films*, 2012 WL 669055, at *5 (finding that, based on allegations that the Doe defendants swapped the same exact file and evidence connecting the IP addresses to the same exact "hash," it was reasonable to conclude that each of the Doe defendants may have directly facilitated the download of the work by another of the Doe defendants and was thus part of the same transaction or series of transactions); *MGCIP v. Does 1-316*, No. 10 C 6677, 2011 WL 2292958, at *2 (N.D. Ill. June 9, 2011) ("[G]iven the decentralized nature of BitTorrent's file-sharing protocol—where individual users distribute the same work's data directly to one another without going through a central server—the Court finds that sufficient facts have been [pled] to support the joinder of the putative defendants at this time.").

Moreover, based on Plaintiff's allegations that Defendants used the 14 IP addresses to upload and download a copy of the copyrighted work that had the same Unique Hash Number, "this means that the copy that each Defendant downloaded ultimately came from a single source. Given the policy in favor of joinder, this is sufficient at this time to deny severance." *Patrick*

12

*Collins*, 2012 WL 4321718, at *2; *see also Digital Sin*, 279 F.R.D. at 244 (declining to sever defendants where the Plaintiff alleged that the Doe defendants were trading the exact same file as part of the same swarm). That these transactions occurred at varying times spanning just a month does not change this outcome. *See Pac. Century Int'l*, 2012 WL 2129003, at *2 (finding that Plaintiff's allegations that the anonymous defendants participated in the same swarm, *at varying times spanning just over one month,* sufficiently alleged that they were involved in the same series of transactions to warrant joinder under Rule 20). Furthermore, "unlike many of the cases where courts have found joinder improper, Plaintiff has sued only Doe defendants whose IP addresses appear to be based in [the Northern District of Indiana]." *Id.* (citing *CP Prods., Inc. v. Does 1-300*, No. 10 C 6255, 2011 WL 737761, at *1 (N.D. Ill. Feb. 24, 2011) (objecting to the large number of defendants over which the court demonstrably lacked personal jurisdiction)).

Moving onto the second requirement for joinder under Rule 20—that Defendants share a "common question of law or fact"—Plaintiff has asserted the same counts of direct and contributory copyright infringement against all Defendants, with no exception (*see* Compl. ¶¶ 45-61), which suggests that joinder is appropriate. *Third Degree Films*, 2012 WL 669055, at *5 (noting, in finding the second joinder requirement "easily met," that Plaintiff asserted the same claim of copyright infringement against all the defendants with no exception). And this case also involves questions of law and fact common to all Defendants, including "whether Plaintiff is a proper copyright holder, whether violations of the Copyright Act have occurred, and whether entering a BitTorrent swarm constitutes willful copyright infringement," fully satisfying the second joinder requirement. *Pac. Century Int'l*, 2012 WL 2129003, at *2 (citation omitted).

Therefore, Plaintiff has met both requirements of permissive joinder under Rule 20, and,

13

as such, Defendants will not be severed on the basis of misjoinder.

### B.  Discretionary Severance under Rule 21

Although Defendants are properly joined, Doe No. 7 also asks the Court to exercise its discretion under Federal Rule of Civil Procedure 21 to sever Does 2-14 because permissive joinder in this case would not comport with notions of fundamental fairness, would inflict severe and unnecessary prejudice on Defendants, and would require the Court to engage in several mini-trials because the facts and defenses would be unique to each Defendant.  (Doe No. 7's Mot. to Sever 8-9.)  Doe No. 6 advances a similar argument.  (*See* Doe No. 6's Mot. to Sever Does 2-14 ¶ 1 (arguing that not severing Defendants would present "significant problems of fairness and justice to the defendants, each of whom may be subject to substantially different circumstances and as a result may raise wildly diverging defenses").)  Doe No. 7 further contends that allowing Plaintiff to continue to proceed against the Defendants in one action would deprive the federal judicial system of the revenue it would have earned if Plaintiff had filed separate suits against each Defendant.  (Doe No. 7's Mot. to Sever 9.)  On the other hand, Plaintiff claims that joinder promotes judicial efficiency, particularly at this stage of the litigation and given the limited number of Defendants.  (Pl.'s Resp. to Doe No. 7's Mot. to Sever 8.)

#### 1.  Standard

Under Federal Rule of Civil Procedure 21, a court may, on motion or on its own, add or drop a party or sever any claim against any party at any time.  *Sunlust Pictures*, 2012 WL 3717768, at *3 (citing Fed. R. Civ. P. 21).  The determination of whether to sever is "committed to the broad discretion of the trial judge."  *Bennett v. Sch. Dirs. of Dist. 115*, No. 96 C 2422,

14

1996 WL 495555, at *2 (N.D. Ill. Aug. 28, 1996); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008,

1016 (7th Cir. 2000) ("It is within the district court's broad discretion whether to sever a claim

under Rule 21."). "The practical effect of severance of previously-joined claims is the creation

of two or more separate actions." *Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 78 (E.D.

Wis. 1985). To decide whether severance is appropriate, "a court should consider the

convenience and fairness to parties as well as the claim's separability in logic and law. A court's

decision should serve the ends of justice and facilitate the prompt and efficient disposition of the

litigation." *Bennett*, 1996 WL 495555, at *2 (internal citations omitted).

    *2. Analysis*

    First, unlike cases involving hundreds of defendants where joinder has been found too

cumbersome, Plaintiff has named only 14 defendants, not hundreds, and only 12 remain in the

case,[1] all of whom are located in this District, facts which weigh in favor of joinder by promoting

judicial efficiency. *Patrick Collins*, 2012 WL 4321718, at *3 (citing *Hard Drive Prods.*, 809 F.

Supp. 2d at 1164 (severing where joinder of the 188 defendants "would result in a logistically

unmanageable case" and where the defendants may be separated by many miles)). Here,

"[j]oinder at the discovery phase would be more efficient than conducting the same discovery in

[twelve] separate cases," *id.*, as it "facilitates jurisdictional discovery and expedites the process

of obtaining identifying information, which is prerequisite to reaching the merits of [Plaintiff's]

claims," *Patrick Collins, Inc. v. John Does 1-15*, No. 11-cv-02164-CMA-MJW, 2012 WL

415436, at *4 (D. Colo. Feb. 8, 2012) (quoting *Voltage Pictures*, 818 F. Supp. 2d at 41-42).

---

    [1] Although there were originally 14 Doe Defendants in this case, Does No. 1 and No. 13 have been
voluntarily dismissed with prejudice (Docket # 27, 28).

Although the judicial system may lose revenue from the filing fees by not severing Defendants into separate cases, the efficiency and facilitation of discovery that joinder brings, at least at this stage, outweigh this concern. *See AF Holdings, LLC v. Does 1-1,058*, __ F.R.D.__, 2012 WL 3204917, at *13 (D.D.C. Aug. 6, 2012) ("[J]oinder at this stage in the proceedings is the single, most efficient mechanism available for the plaintiff to obtain information to identify those allegedly illegally downloading and distributing its movie.")

As to the Doe Defendants' arguments that not severing them would prejudice or otherwise be unfair to them, "the Court acknowledges that a risk of embarrassment exists for the ISP customers who may become publically associated with the [a]lleged IP addresses," as the copyrighted work contains adult, and potentially pornographic, content. *Patrick Collins*, 2012 WL 4321718, at *5. This potential for embarrassment, however, does not outweigh Plaintiff's statutory right to protect its property interest in its copyright, *id.*, and, at least at this point in the litigation, to do so in a single suit against the 12 remaining Doe Defendants.

Further pointing to potential prejudice that could arise from joinder, Doe No. 7 also argues that not severing Defendants would result in several "mini-trials" because each Defendant would present facts and defenses unique to their case. But that Defendants will present different factual issues and legal defenses at a later stage of the litigation does not make joinder inappropriate at the discovery stage; rather, "the commonality of legal claims at this time supports joinder." *Third Degree Films*, 2012 WL 669055, at *5 (citation omitted).

At the same time, the Court is mindful of these concerns as well as the case law suggesting that the litigation strategy Plaintiff has employed in this case has a history of becoming abusive. *See, e.g.*, *Sunlust Pictures*, 2012 WL 3717768, at *5-6 (recognizing that

16

"plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations"); *Hard Drive Prods.*, 2012 WL 2196038, at *5 (discussing cases considering the potentially abusive litigation tactics of adult film producers like Plaintiff here).  As such, the Court remains open to reconsidering whether to sever the Doe Defendants at a later date.  *See Patrick Collins*, 2012 WL 4321718, at *3 (stating that "any Defendant can renew the Motion later if he or she later shows that joinder of him or her would not promote judicial economy"); *Third Degree Films*, 2012 WL 669055, at *5 (noting that the Doe defendants retained their ability to move for severance at a later stage of the litigation and that the court may always sever the case *sua sponte*); *Digital Sin*, 279 F.R.D. at 244 (declining to sever the Doe defendants at that time, but leaving open the possibility of reconsidering the issue later on); *MGCIP*, 2011 WL 2292958, at *2 (finding joinder proper at this stage and noting that the individual defendants could raise the joinder issue again as named parties).  Now, however, Doe No. 6's and Doe No. 7's motions to sever will be DENIED.

## V.  CONCLUSION

For the foregoing reasons, Doe No. 6's Motions to Quash (Docket # 12) and to Sever (Docket # 13) and Doe No. 7's Motion to Sever (Docket # 17) are DENIED.

SO ORDERED.

Enter for the 3rd day of December, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
